## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ABIRA MEDICAL LABORATORIES, | ) | 3:24-CV-00931 (SVN) |
| LLC d/b/a GENESIS DIAGNOSTICS, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AETNA, INC., CVS HEALTH | ) | February 10, 2025 |
| CORPORATION, ABC COMPANIES 1- | ) | |
| 100, AND JOHN DOES 1-100, | | |
| *Defendants*. | | |

## RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this insurance-related action, Abira Medical Laboratories, LLC, alleges that it performed laboratory testing services for insureds of Defendants Aetna, Inc. ("Aetna"), CVS Health, Co. ("CVS Health"), ABC Companies 1-100 and John Does 1-100, for which Plaintiff has not been compensated. Plaintiff brings claims under state common law, although it also seeks to recover benefits and obtain equitable relief under the Employee Retirement Income Security Act ("ERISA"). Aetna and CVS Health have moved to dismiss the complaint in its entirety under Federal Rules of Civil Procedure 8 and 12(b)(6). For the reasons described below, the motion to dismiss is GRANTED, with leave to amend except as to the equitable estoppel and quantum meruit/unjust enrichment claims.

### I.    FACTUAL BACKGROUND

The amended complaint contains the following allegations, which are accepted as true for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff operates a laboratory business that performs medical testing services on specimens submitted to it. Compl., ECF No. 1, ¶¶ 16–17. Defendant Aetna is a mutual insurance company

that provides health insurance services. *Id.* ¶¶ 2, 7. Defendant CVS Health is a healthcare company that is the parent company of Aetna. *Id.* ¶ 8.

From approximately January 2016 to July 2019, Plaintiff provided laboratory testing services that were ordered or authorized by Aetna and CVS and others, including but not limited to Defendants ABC Companies 1-100 and John Does 1-100. *Id.* ¶¶ 2, 23. Plaintiff also alleges that these services were ordered by "physician members of insurance companies . . . , by a non-member physician, or an insured/patient member of an insurance company." *Id.* ¶ 1.

Plaintiff submitted insurance claims to Defendants to receive payment for the laboratory services performed, which Defendants "were supposed to pay." *Id.* ¶¶ 21–22. Plaintiff alleges that Defendants were required to pay such claims, in part, because Defendants entered into insurance contracts with insureds/claimants that required Defendants to pay for laboratory testing services for these insureds/claimants, and that the insureds/claimants assigned to Plaintiff their rights under these insurance contracts by providing their insurance information to Plaintiff for laboratory testing. *Id.* ¶¶ 19, 28–30, 36. The complaint alleges that approximately two hundred claims are at issue, *id.* ¶ 31, though Plaintiff's briefing on this motion increases that number at least forty-five fold, to approximately 9,000 unpaid claims. *See* Pl.'s Opp. Br., ECF No. 31 at 18.

Defendants processed and paid numerous claims submitted by Plaintiff, such that Plaintiff alleges that it was induced to render more laboratory services for the insureds/claimants of Defendants. *Id.* ¶¶ 24, 36. Plaintiff also alleges that certain communications from Defendants induced this reliance and that Defendants knew or should have known that their actions would induce such reliance. *Id.* Eventually, Defendants begin underpaying claims or altogether not paying claims submitted by Plaintiff. *Id.* Plaintiff alleges that it exhausted administrative remedies concerning the nonpayment of claims by filing appeals when claims were denied. *Id.* ¶¶ 4, 31.

2

Plaintiff alleges that it may legally recover for the underpaid or unpaid claims, asserting it is a "designated representative" within the meaning of 29 C.F.R. § 2560.503-1(b)(4)[1] to secure benefits on behalf of "insureds/claimants," or that it is otherwise a contract assignee of the contract between Defendants and their insureds, such that it is "in privity" of contract with Defendants. *Id.* ¶¶ 20, 28–30, 36.

Plaintiff brings claims for:  breach of contract (Count 1); breach of implied covenant of good faith and fair dealing (Count 2); fraudulent misrepresentation (Count 3); negligent misrepresentation (Count 4); promissory estoppel (Count 5); equitable estoppel (Count 6), and quantum meruit/unjust enrichment (Count 7).  Plaintiff does not bring a claim under ERISA, despite alleging that, "[t]o the extent that the contracts relevant to the underlying claims are governed by ERISA, this action is brought to: (1) recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and (2) for equitable relief, pursuant to 29 U.S.C. § 1132(a)(3)."  Compl. ¶ 27.[2] Defendants have moved to dismiss the complaint on all counts under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.  Mot. to Dismiss, ECF No. 24.

## II.    THRESHOLD ARGUMENTS

The Court begins by rejecting two threshold arguments made by Defendants.

### A.    Reliance on Facts Outside of the Complaint

First, the Court rejects Defendants' assertion that, because they do not issue or administer health plans or pay healthcare claims, including the claims at issue in this action, they should be dismissed from this action.  Defs.' Br., ECF No. 24-3 at 13.  Defendants do not draw this assertion

---

[1] That section provides, in relevant part:  "The claims procedures [under ERISA] do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.  Nevertheless, a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant . . . ."

[2] At oral argument, Plaintiff's counsel stated that, because Plaintiff did not know at the time of the filing of the complaint whether any of the insured/claimants' plans were governed by ERISA, Plaintiff chose not to allege a standalone claim under ERISA.

from the complaint, as Plaintiff does not allege as much.  Instead, to support their argument, Defendants have submitted a declaration from a paralegal employed by Aetna Life Insurance Company representing that neither Aetna nor CVS Health "are licensed to issue or administer health benefit plans," and that they do not "make payments on healthcare claims."  Lund Decl., ECF No. 24-1.  But Defendants' reliance on a document outside of the complaint is misplaced.

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the legal feasibility of a complaint.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016).  When evaluating such a motion, courts generally do not look beyond facts in the complaint, documents appended to the complaint or incorporated by reference, and matters of which a court may take judicial notice.  *Id.* at 559.  A court may consider an extrinsic document that is "integral" to the complaint if the complaint "relies heavily upon [the document's] terms and effect."  *Id.*  An integral document is typically "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."  *Id.* (citation omitted).

The Lund Declaration relied upon by Defendants was not included in the complaint, and the Court cannot conclude that it is "integral" to the complaint, as the complaint in no way relies on the declaration's terms and effect.  Accordingly, the Court cannot consider the Lund Declaration at this juncture and therefore cannot grant the motion to dismiss based on arguments premised on the declaration.  As the Court noted at oral argument, however, before filing any amended complaint, Plaintiff is encouraged to thoroughly research whether the named Defendants are the proper Defendants to sue.

B. <u>CVS Health as a Parent Corporation</u>

Next, the complaint cannot be dismissed merely on the basis that the complaint alleges that CVS Health is a "parent company."

Plaintiff alleges that CVS Health is the parent corporation of Aetna. *Id.* ¶ 8. CVS Health seeks to dismiss the complaint on the basis that its status as a parent corporation insulates it from liability. It is true that, generally, a parent corporation may not be held liable for actions of a subordinate entity where a plaintiff does not allege any direct involvement on the part of the parent corporation. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (internal quotation marks omitted); *In re Trilegiant Corp., Inc.*, No. 3:12-CV-00396 (VLB), 2014 WL 1315846, at *5 (D. Conn. Mar. 28, 2014) (concluding that "conclusory allegations" regarding a parent corporation's conduct were insufficient to survive a motion to dismiss "because the plaintiffs failed to allege any specific facts that supported their conclusions that the fraudulent actions at issue in that case were caused by, known to, or ratified by the parent company") (citing *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

But here, Plaintiff alleges direct involvement of CVS Health such that, at least on this argument alone, CVS Health cannot prevail. Plaintiff alleges that Defendants, including CVS Health, were obligated to pay the claims at issue, *see, e.g.,* Compl. ¶ 22, but ultimately failed to do so, *see, e.g. id.* ¶ 36. For the separate reasons outlined below, the Court concludes that the complaint fails to state a claim against either Aetna or CVS Health. But nonetheless, the Court cannot grant CVS Health's motion to dismiss on the grounds that Plaintiff alleged no direct involvement on its behalf.

### III.    RULE 8:  FAIR NOTICE

Although Defendants' threshold arguments do not mandate dismissal, the Court concludes that the complaint should be dismissed for failure to comply with the fair notice requirement of Federal Rule of Procedure 8.  While Plaintiff has not impermissibly lumped Defendants together in its pleading, it has failed to put Defendants on notice of the allegedly underpaid or unpaid claims.

The "principal function" of Rule 8 is to give an adverse party to a pleading "fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Accordingly, Rule 8 requires a plaintiff to "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (internal quotation omitted); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted) ("Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.").

At the outset, the Court rejects Defendants' argument that the complaint should be dismissed because the complaint impermissibly "lumps" together allegations against both Defendants such that Plaintiff has failed to comply with Rule 8.  In the Court's view, where Plaintiff refers to "Defendants," it is reasonable to infer that Plaintiff intended to refer to both Defendants.  *See Conservation Law Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d 416, 441 (D. Conn. 2022) (noting that motions to dismiss for improper group pleading fail when it is "sufficiently clear that in the particular factual context of the case," the complaint "furnishes adequate notice for initial pleading purposes of plaintiff's claim for wrongdoing") (quoting *Arias*

*v. E. Hartford*, No. 3:20-cv-895 (JCH), 2021 WL 3268846, at *4 (D. Conn. July 30, 2021)).  If Defendants believed that the complaint was so vague they could not reasonably respond, their remedy was a motion for a more definite statement, rather than a motion to dismiss.

Plaintiff's failure to identify the allegedly underpaid or unpaid claims at issue, however, is fatal to its complaint.  If a healthcare provider seeks to recover benefits on behalf of insureds but neglects "to identify with sufficient particularity the assignor-beneficiaries whose claims it is asserting, the participants through whom the beneficiaries have benefits, or the identity of the plans under which such benefits are allegedly conferred," the action may properly be dismissed for failure to comply with Rule 8's fair notice requirement.  *MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *6–7 (D. Conn. May 7, 2019), *reconsidered on other grounds*, No. 3:17-CV-01909 (KAD), 2019 WL 3202965 (D. Conn. July 16, 2019) ("Without knowing whose rights [plaintiff] purports to assert, or the plans under which those rights allegedly derive, [defendant] does not have fair notice as to the claims asserted and cannot defend the claims in a meaningful or orderly manner."); *Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-CV-33 (KAD), 2023 WL 2631798, at *6 (D. Conn. Mar. 24, 2023) (same), *aff'd*, 120 F.4th 1107 (2d Cir. 2024); *see also Healthcare Just. Coal. DE Corp. v. Cigna Health & Life Ins. Co.*, No. 3:23-CV-1689 (JAM), 2024 WL 4264391, at *4–5 (D. Conn. Sept. 23, 2024) (concluding that complaint failed to comply with Rule 8, in part, where the complaint did not contain sufficient information to notify the defendant whether the claims were preempted by ERISA).

Here, Plaintiff has not given fair notice to Defendants of the allegedly unpaid claims for which it seeks to recover.  Plaintiff's complaint is devoid of specific information regarding any particular claim for which it seeks compensation, and its briefing does not argue otherwise.

A brief review of how the complaint fails to provide notice for each claim brought is instructive.  For the breach of contract claim, for example, Plaintiff fails to provide any specific information regarding the alleged contract between Defendants and the "insureds/claimants." Defendants, then, are left without knowing, for instance:  (1) the names of individuals to whom services allegedly were provided and the service(s) provided by Plaintiff, which would aid in determining whether such individuals were entitled to payment of benefits; (2) the date Plaintiff billed for each services and/or the date of the exhaustion of Plaintiff's administrative remedies for each claim, which would aid in the preparation of a statute of limitations defense; (3) whether a claim was denied or paid (in some part), and why; (4) the health benefit plan covering each claim, including information sufficient to permit Defendants to identify which plans at issue are governed by ERISA, and therefore which of Plaintiff's claims are subject to express preemption and standing defenses under ERISA, and which claims may be barred by anti-assignment provisions; (5) whether Plaintiff (or the member of the applicable plan) appealed and/or exhausted any administrative remedies required by the applicable plan; or (6) the terms of the alleged assignment between the "insureds/claimants" and Plaintiff, such that Defendants would have notice as to whether the Plaintiff was the recipient of a valid contractual assignment, as alleged.  These non-exhaustive examples demonstrate that Plaintiff, through incomplete pleading, has failed to provide Defendants fair notice of its claims for relief and has handicapped Defendants' ability to effectively respond to the complaint's breach of contract allegations.

Regarding Plaintiff's fraudulent and negligent misrepresentation claims, Defendants are left guessing not only as to the content of the "promises and representations" Plaintiff alleges, *see* Compl. ¶ 36, but also which claims they may relate to and how.  In terms of the estoppel claims, without any information about specific claims, Defendants are similarly left to speculate as to what

specific and definite promise they may have made and are without the ability to argue concerning the reasonableness of Plaintiff's reliance on such promises. Finally, without knowing which claims are at issue for the quantum meruit/unjust enrichment claims, Aetna and CVS Health cannot know exactly for what conduct they have allegedly been unjustly enriched. In short, Plaintiff has left Defendants almost entirely in the dark regarding for what 200 (or 9,000) claims Defendants allegedly owe Plaintiff more than $20 million.[3]

Likewise, the Court dismisses the unidentified Doe Defendants from this action, as Plaintiff's vague allegations against them do not comply with Rule 8's fair notice requirement. Plaintiff alleges, in highly conclusory fashion, that Defendants ABC Companies 1-100 and John Does 1-100 are responsible in some manner for the allegations in the complaint; that Plaintiff's damages were proximately caused by these Defendants; and that these Defendants "acted in concert with, through, and were/was the agent, employee, contractor, partner, servant, employee and/or representative, with the permission and consent of the other Defendants." *Id.* ¶¶ 9, 11–12. The complaint's treatment of the Doe Defendants, however, is "so vague as to make it impossible to identify them." *See Leftridge v. Jud. Branch*, No. 3:22-CV-411 (JAM), 2023 WL 4304792, at *11 (D. Conn. June 30, 2023) (dismissing unknown defendants under Rule 8's notice requirement).[4]

---

[3] The Court notes that, to begin the discovery process, it ordered Plaintiff to disclose a list of claims to Defendants that included as much information as possible about the allegedly unpaid claims, including, if possible, insureds' dates of birth and dates of service. *See* Order, ECF No. 33. Defendants attached a redacted version of this spreadsheet to their reply brief, contending that it still does not provide sufficient detail for them to identify the claims at issue. ECF No. 32-2. The Court does not decide whether the spreadsheet is sufficiently comprehensive because, in any event, the spreadsheet was not included in the complaint and is not properly considered on this motion. The spreadsheet is not "integral" to the complaint, in the sense that the complaint places no reliance on it whatsoever. *Goel*, 820 F.3d at 559. Accordingly, when analyzing whether the complaint complies with Rule 8, the Court does not consider this document—though it is possible it would be properly considered with an amended complaint, if it is attached to the amended complaint itself or otherwise incorporated therein.

[4] In light of its conclusions that the complaint must be dismissed for failure to comply with Rule 8 and because the individual causes of action fail to state a claim, the Court does not reach Defendants' statute of limitations argument at this time.

### IV.    ERISA STANDING AND PREEMPTION

Next, the Court concludes that the complaint contains insufficient information for it to rule on Defendants' ERISA-based arguments for dismissal.  ERISA is a federal law designed, in part, to govern certain health insurance plans.  The purpose of ERISA is to protect the "interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts . . . ."  29 U.S.C. § 1001(b).  Although Plaintiff does not allege a standalone cause of action under ERISA, Defendants contend that, "[u]ndoubtedly, ERISA-governed plans will be implicated in the claims at issue in the Complaint." Defs.' Br. at 19.

Were it clear that the allegedly unpaid claims mentioned in the complaint arise under or otherwise were governed by ERISA plans, the Court would need to decide two issues posed by the parties:  first, whether Plaintiff's state law causes of action are expressly preempted by ERISA; and second, whether Plaintiff has standing to bring claims for unpaid benefits under ERISA, given that it is undisputed it is not a "participant or beneficiary" of an ERISA benefits plans.  *See* 29 U.S.C. § 1132(a)(1)(B).

But the complaint does not provide sufficient factual allegations for the Court to begin to address these arguments.  As explained above, the complaint does not provide allegations concerning the terms of the health benefits plans at issue, so the Court is unable to know the extent to which the allegedly unpaid claims involve ERISA-governed health plans.  Without such information, any resolution of Defendants' ERISA preemption or standing arguments would be premature.  Accordingly, the Court cannot reach Defendants' ERISA-based grounds for dismissal.

## V.       RULE 12(b)(6):  FAILURE TO STATE A CLAIM

Separate from their Rule 8 arguments, Defendants also move to dismiss each of the causes of action for failure to state a claim, under Rule 12(b)(6).  Each of the claims fail under Rule 12(b)(6) as well, providing an alternative basis for dismissal.  *See Kittay*, 230 F.3d at 541 (recognizing distinction between dismissals under Rule 8 and Rule 12(b)(6)).

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

      B.   <u>Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing</u>
           <u>(Counts One and Two)</u>

First, the Court concludes that Plaintiff has failed to plausibly allege that Defendants breached a contract between them. The elements of a breach of contract claim are "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *CCT Commc'ns, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133 (2017).

In order for the parties to have formed an enforceable contract "there must exist an offer and an acceptance based on a mutual understanding by the parties . . . . The mutual understanding must manifest itself by a mutual assent between the parties." *Computer Reporting Serv., LLC v. Lovejoy & Assocs., LLC*, 167 Conn. App. 36, 44 (2016). In short, there must be a "meeting of the minds." *Herbert S. Newman & Partners, P.C. v. CFC Const. Ltd. P'ship*, 236 Conn. 750, 764 (1996). Such assent may be expressly memorialized in writing, but it also may be implied-in-fact. *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 574 (2006).

An implied-in-fact contract "is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." *Id.* at 574. Such a contract arises where plaintiff "rendered services, at the request of the defendant, under an expectation that they were to be paid for and if the defendant either intended to pay for them or the services were rendered under such circumstances that the defendant knew, or, as a reasonable person, should have known that the plaintiff did expect payment." *Connecticut Light & Power Co. v. Proctor*, 324 Conn. 245, 260–61 (2016). Fundamentally, this is a fact-intensive inquiry: in determining

whether the complaint has pleaded that the parties formed an implied-in-fact contract, the Court examines the conduct of the parties, in light of the alleged context and circumstances. *See id.* at 261; *Rahmati v. Mehri*, 188 Conn. 583, 587 (1982) ("It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations.").

It is clear there is no express contract between Plaintiff and Defendants. Plaintiff does not allege that it expressly reached mutual assent as to the material terms of a contractual agreement with either Defendant.

Nor does Plaintiff plausibly allege contract formation under the lens of an implied-in-fact contract. Plaintiff alleges that Defendants processed and paid "numerous claims," informed Plaintiff that such claims were "processed and paid," and gave "intermittent communication representing to [Plaintiff] that [Defendants] would continue to pay subsequent claims." Compl. ¶ 24. But Plaintiff provides no further context regarding the parties' course of dealings that may give rise to the reasonable inference that the parties had an implied-in-fact contract. Plaintiff, for example, does not provide any other allegations speaking to how long the pattern of payment was, the number of claims Defendants paid, the value of claims Defendants paid, the similarity of the paid claims to the unpaid ones, or any other representation, express or implied, about the prospect of paying future claims. What the complaint provides, then, is a vague and undefined assertion of past payment of claims and the bald assertion of "intermittent communication" regarding the future payment of claims. Even drawing reasonable inferences in Plaintiff's favor, as the Court must at this juncture, the complaint simply does not provide enough well-pleaded facts concerning the circumstances and context of the parties' interactions to make plausible the contention that the parties' conduct amounted to an implied-in-fact contract.

Having concluded that the complaint does not plausibly allege contract formation directly between Plaintiff and Defendants, the Court must turn to whether the complaint plausibly alleges that Plaintiff was the assignee of a contract between "insureds/claimants" and Defendants. The Court concludes that the complaint has not done so.

"[T]o constitute an assignment there must be a purpose to assign or transfer the whole or a part of some particular thing . . . and the subject matter of the assignment must be described with such particularity as to render it capable of identification." *Centerplan Constr. Co., LLC v. City of Hartford*, 343 Conn. 368, 394 (2022). Plaintiff alleges that Defendants' insureds/claimants were party to an insurance contract that required Defendants to pay for laboratory services and that these insureds/claimants assigned to Plaintiff the right to file insurance claims for lab testing and collect benefits from the insurance company, by "providing [Plaintiff] the necessary insurance information for [Plaintiff] to file the claims and collect the payments on behalf of the insureds." Compl. ¶ 39. Elsewhere in the complaint, Plaintiff alleges the same assignment was accomplished by insureds/claimants "providing their authorization and/or insurance information to [Plaintiff], specifically for [Plaintiff] to claim payments from the Defendants for the lab tests." *Id.* ¶ 19. This assignment, Plaintiff contends, put it "in privity" with Defendants and makes Plaintiff entitled to benefits of the contract. *Id.* ¶ 40.

The Court concludes that Plaintiff fails to allege that the subject matter of the assignment was described with the required degree of particularity. Plaintiff baldly asserts that it received an assignment to claim payment, without alleging any specific terms of the assignment or providing any factual allegations of how the assignment was executed, other than the vague assertion that insureds/claimants provided their insurance information to Plaintiff. Plaintiff does not identify the terms of even a single assignment; it simply asserts, in conclusory fashion, that it received an

14

assignment as to each of the hundreds (or thousands) of claims at issue. Accordingly, the Court must conclude that the allegations provide no "particularity as to render [the assignment] capable of identification." *Centerplan Constr. Co., LLC*, 343 Conn. at 394.

Nor is Plaintiff's reliance on *Abira Med. Lab'ys, LLC v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 24-CV-759, 2024 WL 2188911 (E.D. Pa. May 15, 2024) to any avail. There, the Court did find a valid assignment between patients and the plaintiff in a somewhat similar factual context. But the Court specifically noted that the plaintiff there had alleged that each patient "received a 'requisition[ ] for laboratory testing services' in which each patient 'executed an assignment of benefits with respect to their original requisitions for services,'" and that plaintiff alleged that "[t]hese documents . . . purported to assign the benefit of payment by [defendant] to [plaintiff]." *Id.* at *2.

Here, Plaintiff does not allege that any particular documents purport to assign benefits. Instead, Plaintiff relies on a vague allegation that provision of insurance information initiated a contractual assignment. In its opposition brief, Plaintiff argues that assignment language can, in fact, be found in requisition forms, and states that it was "standard practice to have requisition forms generated" when insureds/claimants visited physicians who ordered lab testing and that those forms "clearly assign to [Plaintiff], the right to payment for testing services . . . ." Pl.'s Opp. Br. at 26, 31. But, even if reference to requisition forms were enough to allege a valid assignment—an issue the Court explicitly does not decide here—this allegation is not to be found in the complaint, which makes no mention whatsoever of requisition forms. It is well-settled that a plaintiff cannot amend its complaint by asserting new facts through an opposition to a motion to dismiss. *See Killoran v. Westhampton Beach School Dist.*, No. 21-cv-3264 (JS) (SIL), 2022 WL 4484630, at *8 (E.D.N.Y. 2022). Accordingly, the Court cannot rely on this representation in the

15

opposition brief.  And in any event, the Pennsylvania case is not binding on this Court and, applying Connecticut law here, the Court simply cannot find that Plaintiff's barebones allegation of an assignment plausibly shows a contract assignment with any degree of particularity.

Additionally, because the complaint fails to allege a contractual relationship between Plaintiff and Defendants, Plaintiff's claim for breach of the covenant of good faith, Count Two, necessarily fails.  *See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013) ("[B]ecause the covenant of good faith and fair dealing only requir[es] that neither party [to a contract] do anything that will injure the right of the other to receive the benefits of the agreement, it is not implicated by conduct that does not impair contractual rights.").

C.  Negligent and Fraudulent Misrepresentation (Counts Three and Four)

Nor does the complaint state a claim for negligent or fraudulent misrepresentation.

To state a claim for negligent misrepresentation under Connecticut law, a plaintiff must allege: (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result.  *See Stuart v. Freiberg*, 316 Conn. 809, 821–22 (2015).

Plaintiff has not plausibly alleged the first three of these elements.  Plaintiff asserts vaguely that Defendants made a misrepresentation in the form of an unspecified promise in their "insurance contracts" to pay for the costs of testing specimen, when Defendants, in fact, knew that they would later refuse to pay for these tests.  Compl. ¶¶ 51–52.  Plaintiff also alleges that in "intermittent communication" with Defendants, Defendants represented they would pay claims submitted by Plaintiff.  Compl. ¶ 24.  But Plaintiff fails to provide any factual allegations showing the content of any such promise or any details of communications to plausibly show a promise was made. Additionally, Plaintiff offers few, if any, allegations to make plausible the proposition that

Defendants knew or should have known such a promise, whatever it may have been, was false. Plaintiff's allegations are effectively "[t]hreadbare recitals of the elements" of the cause of action, "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. These do not meet the plausibility threshold.

Separately, Plaintiff's allegations of fraudulent misrepresentation fail to meet Rule 9(b)'s heightened pleading standard for actions alleging fraud. *See Veritas-Scalable Inv. Products Fund, LLC, v. FB Foods, Inc.*, 238 F.R.D. 339, 343 (D. Conn. 2006) (applying Rule 9(b) to fraudulent misrepresentation claim brought under Connecticut law). In order for a fraudulent misrepresentation claim to survive a motion to dismiss under Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted). Plaintiff fails to state with any particularity the statements that the plaintiff contends were fraudulent, or where and when the statements were made. *Id.* This cause of action therefore fails at the threshold.

Plaintiff's attempt in briefing to categorize Defendants' alleged fraudulent or negligent misrepresentation as one of omission, Pl.'s Opp. Br. at 36, fails. "Fraud by nondisclosure, which expands on the first three of [the] four elements [for a fraud action], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there was a duty to speak. . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment." *Asnat Realty, LLC v. United Illuminating Co.*, 204 Conn. App. 313, 321–22 (2021). Plaintiff makes no attempt to argue that its complaint satisfies these requirements.

For these reasons, Counts Three and Four are dismissed for failure to state a claim.

D. <u>Promissory and Equitable Estoppel (Counts Five and Six)</u>

Plaintiff's claims for promissory and equitable estoppel also fail.

Promissory estoppel is a cause of action recognized under Connecticut law—though Plaintiff has not successfully stated a claim for it. *See Torringford Farms Ass'n, Inc. v. City of Torrington*, 75 Conn. App. 570, 575 (2003). A "fundamental element" of promissory estoppel is the existence of a "clear and definite promise which a promisor could reasonably have expected to induce reliance." *Id.* Additionally, the defendant must have done or said something "calculated or intended to induce [plaintiff] to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *TD Bank, N.A. v. Salce*, 175 Conn. App. 757, 767 (2017). Moreover, a plaintiff must show that he "exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." *Id.*

Here, as described above, Plaintiff fails to plausibly allege a clear and definite promise. Plaintiff has only vaguely alleged a promise between Defendants and their insureds/claimants without providing any facts about what that promise entailed. *See, e.g.*, ¶ 63. Plaintiff does not, for example, cite any specific contractual provisions supporting the proposition it asserts. As with its misrepresentation claims, in its opposition brief, Plaintiff argues that it "relied on Defendant's representation that [Plaintiff], who stands in the shoes of the members/insureds, would be compensated for medical services." Pl.'s Opp. Br., ECF No. 31 at 37. But the complaint does not support this assertion, as it sheds very little, if any, light on exactly what Defendants' "representation," or promise, was.

Additionally, Plaintiff's allegation that Defendants stopped paying claims that Plaintiff

submitted actually cuts against Plaintiff's promissory estoppel claim. Indeed, that Defendants at once paid for certain claims and then stopped paying for such claims supports the inference that there was no clear and definite understanding between the parties. *See Abira Med. Lab'ys, LLC v. Cigna Health & Life Ins. Co.*, No. 3:23-CV-830 (VAB), 2024 WL 4349052, at *9 (D. Conn. Sept. 30, 2024) ("[I]f [plaintiff] knew that [defendant] had not been paying for these services, [plaintiff] cannot plausibly allege that [defendant] had made a 'clear and definite promise' to pay for these services.").

Moreover, Plaintiff fails to assert that it exercised due diligence to "know the truth" regarding Defendants' payment of claims. *See TD Bank, N.A*, 175 Conn. App. at 767. Plaintiff baldly asserts reliance, but does not provide any allegations supporting an inference that it attempted to learn whether Defendants' alleged representations were true.

As for Plaintiff's claim for equitable estoppel in Count Six, this claim must be dismissed, as Connecticut law recognizes equitable estoppel as a special defense, but not as a cause of action. *See Dickau v. Town of Glastonbury*, 156 Conn. 437, 442 (1968) ("[E]quitable estoppel is available only for protection and cannot be used as a weapon of assault."); *see also Abira Med. Lab'ys, LLC*, 2024 WL 4349052, at *8 ("Connecticut does not recognize equitable estoppel as a cause of action, but rather as a special defense."). Accordingly, the Court's dismissal of the complaint's equitable estoppel claim is with prejudice.

### E.  Quantum Meruit/Unjust Enrichment (Count Seven)

Finally, Plaintiff's quantum meruit/unjust enrichment claim must also be dismissed. Quantum meruit allows for recovery out of the need to avoid unjust enrichment, even in the absence of an express or implied agreement. *Gagne v. Vaccaro*, 255 Conn. 390, 401 (2001). To recover for unjust enrichment, a plaintiff must plausibly plead: "(1) that the defendants were

benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Culver v. Culver*, 127 Conn. App. 236, 249 (2011). In the health insurance context, "[c]ourts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds." *Murphy Med. Assocs., LLC*, 2023 WL 2631798, at *8; *MCI Healthcare, Inc.*, 2019 WL 2015949, at * 10 (collecting cases); *Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit."); *see also Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *3 (2d Cir. 2024) (summary order) (affirming dismissal of unjust enrichment claim where the patient, not the insurance company, received the benefit of the providers' services). Accordingly, Plaintiff, as a provider of medical testing services, has failed to show how Defendants have incurred a benefit for the services allegedly rendered to their insureds, such that Defendants would be liable for unjust enrichment. In light of the settled law that insurance companies do not derive a benefit from services rendered to their insureds, leave to amend a quantum meruit/unjust enrichment claim would be futile.

## VI.    CONCLUSION

For the reasons described herein, Defendants' motion to dismiss Plaintiff's complaint is GRANTED. The Court grants Plaintiff leave to amend the complaint to remedy the deficiencies identified in this order, except as to the equitable estoppel and quantum meruit/unjust enrichment claims, which are dismissed without leave to amend. Plaintiff may file an amended complaint by

February 24, 2025.  Defendants must respond to the amended complaint by **March 10, 2025**.  *See*

Fed. R. Civ. P. 15(a)(3).


       **SO ORDERED** at Hartford, Connecticut, this 10th day of February, 2025.

                     */s/ Sarala V. Nagala*
                     SARALA V. NAGALA
                     UNITED STATES DISTRICT JUDGE